CYCLOPS CORPORATION, Plaintiff,

v.

FISCHBACH AND MOORE, INC. and Allis-Chalmers Manufacturing Co., Defendants.

Civ. A. No. 70–1370.

United States District Court, W. D. Pennsylvania.

Nov. 17, 1978.

**650**

W. McCook Miller, Pittsburgh, Pa., for plaintiff.

Edmund S. Ruffin, III, Pittsburgh, Pa., for Fischbach and Moore, Inc.

Thomas J. Reinstadtler, Pittsburgh, Pa., for Allis-Chalmers.

## OPINION

WEBER, Chief Judge.

The instant case arises from a sale of a large electrical motor, the subsequent malfunction of said motor, and certain damages attendant to such malfunction. This action, as well as a related case, has been the source of protracted litigation before this Court. In previous opinions we have granted summary judgment in favor of Cyclops Corporation with regard to its claim for business interruption insurance coverage, *Cyclops Corp. v. Home Insurance Co. v. Fischbach and Moore, Inc.*, 352 F.Supp. 931 (W.D.Pa.1971) (hereinafter *Cyclops I*); granted summary judgment against Cyclops Corporation on its claim for lost profits, *Cyclops Corp. v. Home Insurance Co. v.*

*Fischbach and Moore, Inc.*, 389 F.Supp. 476 (W.D.Pa.1975), *aff'd mem.*, 523 F.2d 1050 (3d Cir. 1975) (hereinafter *Cyclops II*); and denied Allis-Chalmers Manufacturing Company's motion to amend its answer so as to assert a counterclaim, *Cyclops Corp. v. Fischbach and Moore, Inc.*, 71 F.R.D. 616 (W.D.Pa.1976) (hereinafter *Cyclops III*). Our opinion in *Cyclops II* resolved all disputed claims between the present parties except for the allocation of liability for certain shipping charges and labor expenses incurred in connection with the repair of the subject electrical motor.

The Court is presently concerned with Cyclops Corporation's motion for summary judgment as to this outstanding damage issue. Cyclops Corporation claims $14,-990.71 for damages sustained as the proximate result of the motor malfunction. Allis-Chalmers Manufacturing Company denies liability under provisions of the parties' contract. Counsel have submitted the motion for resolution on the basis of a stipulation of facts, briefs and the present state of the record.

### I.

At all times relevant to this action plaintiff Cyclops Corporation ("Cyclops"), a Pennsylvania corporation, was a producer of carbon steel products. Defendant Fischbach and Moore, Inc. ("Fischbach"), a New Jersey corporation, was an electrical contractor. Defendant Allis-Chalmers Manufacturing Company ("Allis-Chalmers"), a Delaware corporation, was a manufacturer of electrical and mechanical equipment. Jurisdiction is founded on 28 U.S.C. § 1332.

In the latter part of 1965 Cyclops purchased a quantity of electrical equipment through Fischbach, including a certain 8,500 horsepower electrical drive motor ("Motor") manufactured by Allis-Chalmers. The Motor was installed, in 1967, at Cyclops' facility in Mansfield, Ohio. Thereafter, on January 20, 1969, the Motor malfunctioned and was shipped to Allis-Chalmers for repair. Subsequent to repair, the Motor was returned to Mansfield, Ohio. Cyclops' operation resumed on January 29, 1969.

As noted previously, the Court has permitted Cyclops to recover business interruption insurance for the nine day period during which the Motor was inoperative, *Cyclops I*; but has denied recovery for a loss of profits during the same period, *Cyclops II*. The sole remaining issue is whether Cyclops may recover for expenses incurred (i. e., labor and freight charges) in the shipment of the Motor to Allis-Chalmers for repair. We are convinced that there is no genuine issue of material fact on this liability question which would preclude our consideration.

## II.

In analyzing the liability issue the Court must rely, initially, on the relevant contractual language, to-wit:

"Company's liability to Purchaser whether in contract or in tort arising out of warranties, representations, instructions, or defects from any cause, shall be limited exclusively to correcting the equipment and under the conditions as aforesaid."

"Company shall not in any event be liable for indirect, special, consequential or liquidated damages or penalties."

\* \* \* \* \* \*

"The Company shall in no event be liable for indirect, special, or consequential damages."

Notably, we deemed these identical provisions controlling in *Cyclops II*. Although we will not attempt to reproduce our full opinion with regard to this pertinent contract language, we incorporate the rationale of *Cyclops II* herein by reference. It will suffice to say that in *Cyclops II* the Court recognized and approved the intent of U.C.C. § 2–719, i. e., encouraging consensual allocations of risk in commercial settings. We held that limitations of commercial losses not involving personal injury or property are not "unconscionable" pursuant to U.C.C. § 2–719(3) and, that in the absence of bad faith, stipulations as to the measure of damages will be enforceable.

Allis-Chalmers argues, in essence, that our opinion in *Cyclops II* forecloses any recovery for the subject labor and freight charges. In the estimation of Allis-Chalmers, recovery of said damages is precluded by the above referenced contract language, as well as the rationale of *Cyclops II*. We disagree. *Cyclops II* is not, and was not intended to be, dispositive of the issue now before the Court. Admittedly, our previous opinion contains the following language:

"The bargain of the parties was that the liability of the manufacturer was to be limited to the correction of the defect, . . . " *Cyclops II,* at 482–83

We did not, however, hold or intimate that the manufacturer was free from liability for expenses incident to its duty to repair the defect. In the opinion of the Court, the labor and freight charges at issue were incurred by Cyclops in furtherance of Allis-Chalmers obligation. We believe that such expenses must be borne by Allis-Chalmers as they are implicit in its duty to repair.

Allis-Chalmers raises two additional arguments which may be summarily dismissed. Initially, Allis-Chalmers asserts that there is language in the parties' contract which limits liability for the labor charges involved in the dismantling and reassembling of the Motor, to wit:

"Unless the contract or purchase order for the equipment otherwise specifies, the equipment shall be erected, installed, or serviced by the Purchaser at its own expense."

The Court is convinced that this language relates only to the initial installation and, therefore, has no bearing on labor charges incident to the duty to repair. Finally, Allis-Chalmers asserts that there is contract language which limits liability for shipping charges, to wit:

" . . . Company shall be obligated, and shall have the right to remedy such failure by, at Company's option, adjustment, or repair, or replacement f. o. b. shipping point of any part of the equipment affected by such failure."

In this instance, we are not convinced that " . . . f. o. b. shipping point . . . "

refers to the Allis-Chalmers' repair facility. We believe that the most reasonable interpretation of the term "shipping point" is that location from which the defective part must be shipped for adjustment, repair or replacement. At best, however, the subject language is ambiguous and must be construed against Allis-Chalmers as the maker of the form contract.

As authorized by Fed.R.Civ.P. 52(a), findings of fact and conclusions of law are included in the foregoing opinion.

An appropriate order shall issue.